**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/08/24

BDO USA, P.C.,

                              Plaintiff,

         -against-                                          No. 24 Civ. 101 (CM)

JUSTIN ROJAS,

                              Defendant.

----------------------------------------------------------x

### MEMORANDUM DECISION DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

McMahon, J.:

On February 21, 2024, Defendant Justin Rojas moved for an order transferring this case to the District of Colorado. (Dkt. No. 14). On June 27, 2024, the court granted Rojas's motion. (Dkt. No. 24). BDO now moves for reconsideration of that order, on the ground that the court committed "clear error" in applying Colorado law to the instant case. Specifically, BDO asserts that the court's decision "overlooked" the New York Court of Appeals' decision in *Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462 (February 20, 2024) – a decision handed down after the motion was made and while it was being briefed. BDO argues that this decision compels the conclusion that New York law, not Colorado law, must apply in the instant case – which would result in the denial of the motion to transfer.

Because there is clear Second Circuit precedent requiring this court to apply Colorado law, and because only the Second Circuit, with the assistance of the New York Court of Appeals, can resolve what this and other courts have identified as a series of problematic and unclear precedents, the motion for reconsideration is reluctantly DENIED.

## I.   **Legal Standard**

To prevail on a motion for reconsideration, the movant must demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.1983). The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court, especially when there has been no appellate review of the prior decision. *See Mina Invest. Holdings, Ltd. v. Lefkowitz*, 184 F.R.D. 245, 250 (S.D.N.Y.1999).

The court's review "is narrow and applies only to already-considered issues; new arguments and issues are not to be considered." *Morales v. Quintiles Transnat'l Corp.*, 25 F.Supp.2d 369, 372 (S.D.N.Y.1998). "Reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

## II.   **Background**

It is not possible to decide this motion without taking a deep dive into recent developments in jurisprudence from the New York and Second Circuit Courts of Appeal about the propriety of going behind a choice of law clause in a contract.[1]

### A.   *New York's General Obligations Law*

In 1984, the NY legislature passed General Obligations Law § 5–1401, which states:

1.  The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection (a) of section 1-301 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. This section

---

[1] Very little of what follows was discussed when the original motion was briefed.

2

shall not apply to any contract, agreement or undertaking (a) for labor or personal services, (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection (c) of section 1-301 of the uniform commercial code.

2. Nothing contained in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract, agreement or undertaking.

### B. *New York Law Prior to IRB-Brasil*

Prior to 2012, "In cases arising from contracts that include[d] a choice-of-law clause, New York courts follow[ed] the test set forth in the Restatement (Second) of Conflicts of Laws." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006). Section 187(2) of the Restatement (Second) Conflict of Laws states that:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either:

(a)     the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

(b)     application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Following this approach, "in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court [wa]s to apply the law selected in the contract as long as the state selected ha[d] sufficient contacts with the transaction." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000).

### C. *IRB-Brasil*

In 2012, the New York Court of Appeals decided *IRB–Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 20 N.Y.3d 310, (2012), *cert denied* 569 U.S. 994, (2013). In *IRB–Brasil*, the litigation

was over a business arrangement among Brazilian companies. The master agreement among them provided that it, and its underlying notes and guarantees, were governed by "the laws of the State of New York, without regard to conflict of laws principles." *Id.* at 313.

The parties agreed that the choice of law clause was enforceable and that New York law applied. *Id.* However, the guarantor of the note at issue asserted that, under New York's ***common law*** conflict of laws principles, the law of Brazil should control – and that, under Brazilian law, the guarantee was void. *Id.*

Applying General Obligations Law § 5–1401, the New York Court of Appeals concluded that New York substantive law governed, since the parties had designated New York as governing and the value of the transaction exceeded the statutory threshold. *IRB–Brasil*, 20 N.Y.3d at 315. Additionally, the court rejected the argument that the "whole" of New York law should apply, i.e., that New York's common law conflict-of-laws principles should apply as well as the state's substantive law. The court explained that: "To find here that courts must engage in a conflict-of-laws analysis despite the parties' plainly expressed desire to apply New York law would frustrate the Legislature's purpose of encouraging a predictable contractual choice of New York commercial law and, crucially, of eliminating uncertainty regarding the governing law." *Id.* at 315-16.[2]

The court did not explicitly overturn its prior practice of following the Restatement in cases with a choice of law provision. However, the court's dictum suggested that it might be doing so:

> The Legislature passed [General Obligations Law § 5–1401] in 1984 in order to allow parties without New York contacts to choose New York law to govern their contracts. Prior to the enactment of section 5–1401, the Legislature feared that New York courts would not recognize "a choice of New York law [in certain contracts] on the ground that the particular contract had insufficient 'contact' or 'relationship' with New York" (Sponsor's Mem., Bill Jacket, L 1984, ch 421 at 8). Instead of applying New York law, the courts would conduct a conflicts analysis and apply

---

[2] The fact that the agreement said that New York's choice of law rules did not apply would seem to have been determinative. However, the decision barely mentions this, and it appears that one of the parties argued as though this provision – a common enough one – did not appear in the contract.

4

the law of the jurisdiction with "the most significant relationship to the transaction and the parties" (*Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 317, [1994] [quoting Restatement (Second) of Conflict of Laws § 188(1)]). As a result, parties would be deterred from choosing the law of New York in their contracts, and the Legislature was concerned about how that would affect the standing of New York as a commercial and financial center (*see* Sponsor's Mem., Bill Jacket, L 1984, ch 421). The Sponsor's Memorandum states, "In order to encourage the parties of significant commercial, mercantile or financial contracts to choose New York law, it is important ... that the parties be certain that their choice of law will not be rejected by a New York Court" (*id*. at 8). The Legislature desired for parties with multi-jurisdictional contacts to avail themselves of New York law if they so designate in their choice-of-law provisions, in order to eliminate uncertainty and to permit the parties to choose New York's "well-developed system of commercial jurisprudence" (*id*. at 7). . . . Section 5–1402(1) opened New York courts up to parties [i.e., foreign entities] who lacked New York contacts but who had (1) engaged in a transaction involving $1 million or more, (2) agreed in their contract to submit to the jurisdiction of New York courts, and (3) chosen to apply New York law pursuant to General Obligations Law § 5–1401. The statutes read together permit parties to select New York law to govern their contractual relationship and to avail themselves of New York courts despite lacking New York contacts.

*Id.* at 314.

This explanation, combined with the holding that a court should not apply New York's "common law conflicts-of-laws principles" (which are embodied in the Restatement), certainly suggests that the New York Court of Appeals was rejecting the Restatement approach to conflicts of law, specifically with regard to parties whose relations lacked contacts with New York, but who had chosen New York's law as governing law and whose contract fell within the parameters of General Obligations Law § 5–1401.

### D. *Ministers*

In 2015, the New York Court of Appeals extended *IRB-Brasil*'s holding in *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466 (2015). The key differences between *IRB–Brasil* and *Minsters* were that (1) the contracts in *Ministers* were not consummated pursuant to General Obligations Law § 5–1401, and (2) the contracts in *Ministers* implicated a New York statutory choice of law directive, not the New York common-law conflicts principles that were at issue in *IRB-Brasil*.

5

*Minsters* concerned a New York choice-of-law clause in a retirement and death benefit plan administered by a New York-based plaintiff. The parties agreed that New York law would apply to the contract, *id.* at 470, but disputed whether the application of New York law necessarily included the application of a New York statute, EPTL 3-5.1(b)(2), which provided that, "The intrinsic validity, effect, revocation or alteration of a testamentary disposition of personal property, and the manner in which such property devolves when not disposed of by will, are determined by the law of the jurisdiction in which the decedent was domiciled at death." The question before the court was whether EPTL 3–5.1(b)(2) should be characterized as part of New York's substantive or "local law," which the contracting parties intended to apply, or whether it was simply a conflict-of-laws rule, which they did not intend to apply. *Id.* at 470.

The court ultimately found that EPTL 3–5.1(b)(2) was a statutory choice-of-law rule, and because the parties had stipulated (during the lawsuit, not expressly in their contract) that New York choice of law rules did not apply to their case, the Court of Appeals held that it was inapplicable to the case. *Id.* at 473. The Court of Appeals reaffirmed *IRB*'s holding that "where parties include a New York choice-of-law clause in a contract, such a provision demonstrates the parties' intent that courts not conduct a conflict-of-laws analysis." *Id.* at 468. Notably, it extended that rule to contracts that did not fall within General Obligations Law § 5–1401. The court also "clarif[ied] that this rule obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives, unless the parties expressly indicate otherwise." *Id.* Put otherwise, the Court held that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract." *Id.* at 474.

In *Ministers,* the Court of Appeals reaffirmed much of the discussion quoted above from *IRB-Brasil* – a discussion that, significantly for our purposes, focused on the New York

Legislature's desire to allow contracts that had no relationship to New York to nonetheless be governed by New York law if the parties so chose. *See id.* at 472, 75. Once again the Court of Appeals did not say in so many words, "We are overruling the Restatement approach," but in the opinion of this court, it is difficult to read *Ministers* (or *IRB-Brasil*, for that matter) in any other way.

However, three years later, the Second Circuit asserted (albeit in a summary order) that the *Ministers* holding was limited in its scope, and that the Restatement approach might still apply, at least in some cases. *See Capstone Logistics Holdings, Inc. v. Navarrete*, 736 F. App'x 25, 26 (2d Cir. 2018) ("In *Ministers*, the Court of Appeals of New York did not have cause to address the status of prior law recognizing that the parties' choice of law must yield to a conflicting law reflecting the 'fundamental public policy' of a state with a 'materially greater interest' in the dispute than the chosen state.") (collecting pre-*Ministers* New York Court of Appeals' cases applying the Restatement approach).

   E.  *Moseley and Elliot*

Two years after *Capstone* and five years after *Ministers*, the Second Circuit decided *United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020). *Moseley* was a criminal case, in which the defendant had been convicted of operating an illegal payday-loan scheme. On appeal, he argued that the district court had erred in instructing the jury that New York usury laws applied to the loans he had made to borrowers in New York "because they gave no effect to the choice-of-law provisions set out in the loan agreements." *Id.* at 19. Applying New York choice-of-law rules, the Second Circuit rejected the argument, finding the choice-of-law provisions in the contract unenforceable since they violated "a longstanding public policy in New York in favor of enforcing its usury laws to protect those of its residents who enter into consumer debt contracts." *Id.* at 22.

The Circuit did not cite, let alone discuss, either *IRB-Brasil* or *Ministers & Missionaries.* Instead, it followed – without qualification – the Restatement approach, "describ[ing] New York's general rule for assessing the effectiveness of contractual choice-of-law provisions as follows: 'New York law is unambiguous in the area of express choice of law provisions in a contract. Absent fraud or violation of public policy, contractual selection of governing law is generally determinative *so long as the State selected has sufficient contacts with the transaction.*'" *Id.* at 20 (emphasis added) (quoting *Int'l Minerals & Res., S.A. v. Pappas,* 96 F.3d 586, 592 (2d Cir. 1996)). It is extremely hard to square that purported lack of ambiguity with the rather clear statement, found in both New York Court of Appeals decisions, that the Legislature had intended parties to be able to choose New York law even when their relationship had no other contact with New York. However, the Second Circuit did not discuss whether *Ministers* or *IRB-Brasil* had worked any limitation on (or even overruled) what had been New York's longstanding approach to conflicts analysis in the context of a choice of law provision .

Three years after *Moseley,* the Second Circuit seemingly doubled down on this approach, in *Elliott v. Cartagena,* 84 F.4th 481 (2d Cir. 2023). *Elliot* was a civil case, where the Second Circuit found that the lower court had "likely" correctly found that Florida law applied to an agreement which stated that "the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of Florida." *Id.* at 496, n.1. In so finding, the Circuit repeated its statement that, "Under New York law, '[a]bsent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction.'" *Id.* (citing *Moseley,* 980 F.3d at 20). However, as they parties did not dispute that Florida law governed their dispute, the Second Circuit did not delve further into the *Moseley/*Restatement analysis.

Since *Moseley,* there has been a great deal of confusion and disagreement among my colleagues on the district courts in this Circuit about how proceed in light of these seemingly conflicting holdings from the Second Circuit and the New York Court of Appeals. Some courts have found ways to reconcile *Ministers/IRB-Brasil* and *Moseley* and have followed *Moseley* and used the Restatement test on that basis. *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 418 (S.D.N.Y. 2023); *LG Cap. Funding, LLC v. ExeLED Holdings Inc.*, No. 17-CV-4006 (LJL), 2024 WL 1116082, at *16 (S.D.N.Y. Mar. 13, 2024); *DF Ventures, LLC v. Aaron & Gianna, PLC*, No. 22-CV-9586 (LJL), 2024 WL 916343, at *10 (S.D.N.Y. Mar. 4, 2024); *DarkPulse, Inc. v. Crown Bridge Partners, LLC*, No. 22 CIV. 8163 (VM), 2023 WL 6386006, at *4 (S.D.N.Y. Sept. 29, 2023); *Busrel Inc. v. Dotton*, No. 1:20-CV-01767, 2022 WL 16559446, at *12 (W.D.N.Y. Nov. 1, 2022); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2022 WL 1997207, at *15 (S.D.N.Y. June 6, 2022); *Medtronic, Inc. v. Walland*, No. 21 CIV. 2908 (ER), 2021 WL 4131657, at *1 (S.D.N.Y. Sept. 10, 2021). Other courts have noted, as this court did in its prior order, that *Moseley* and *Ministers* are in tension and "difficult to square." However, despite these issues, these courts ultimately applied *Moseley* and conducted conflicts analysis where contracts specified that New York law governed, on the ground that *Moseley* post-dated *Ministers* and so must have been considered and somehow reconciled (albeit *sub silentio*) by the Second Circuit. *See Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 92 (S.D.N.Y. 2021); *Retina Assocs. of W. New York, P.C. v. McKesson Corp.*, No. 23-CV-6174-FPG, 2023 WL 7326050, at *3 (W.D.N.Y. Nov. 7, 2023). Finally, a few courts have simply ignored *Moseley* and followed *Ministers,* on the understanding that New York's highest court has banned conflicts of law analysis in every case where the parties choose New York law, without exception. *See, e.g.,*

*Cotiviti, Inc. v. McDonald*, No. 19-CV-6559 (VSB), 2021 WL 2784529, at *4 (S.D.N.Y. July 2, 2021).

    *F.*  *Petroleos*

    Four years after *Moseley* – while this parties were briefing Rojas' transfer motion – the New York Court of Appeals decided *Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462 (2024) ("*Petroleos III*").

    *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 495 F. Supp. 3d 257 (S.D.N.Y. 2020) ("*Petroleos I*") arose out of a bond swap transaction (the "Exchange Offer") that occurred in October 2016. Plaintiff Petróleos de Venezuela, S.A. ("PDVSA") had previously issued two sets of bonds that were scheduled to come due in 2017. However, in the years following the issuance of the 2017 notes, the Venezuelan oil market had become volatile, and by September 2016 it seemed unlikely that PDVSA would be able to pay its obligations. In an effort to forestall a potential default on the 2017 Notes, PDVSA engineered the Exchange Offer, by which it would swap the 2017 Notes for bonds scheduled to come due in 2020 (the "2020 Notes"). *Id.* at 261.

    The Exchange Offer was subject to much dispute in Venezuela and was condemned by the National Assembly, the legislative organ of Venezuela. Nevertheless, the Exchange Offer was approved by the parties to the transaction, and the 2020 Notes were issued, in October 2016. PDVSA then failed to make required payments on October 27, 2019, and thus defaulted on its obligations under the 2020 Notes. *Id.*

    PDVSA sought to avoid the consequences of its default by seeking a declaratory judgment that the 2020 Notes and the Indenture, Pledge Agreement, and Guaranty attached to them (together, the "Governing Documents") were issued and entered into illegally, and thus were null and void ab initio. Specifically, Plaintiffs argued that the 2020 Notes and the Governing Documents were

null and void because they were issued and entered into without the prior approval of the National Assembly, and therefore in violation of certain provisions of the Venezuelan Constitution. Defendants, for their part, asked the court to find that the 2020 Notes and Governing Documents were valid and enforceable and that Plaintiffs were in default. To that end, Defendants argued that New York law controlled any inquiry into the validity of the 2020 Notes and Governing Documents and that there was no assertion of invalidity or illegality under New York law. *Id.* The parties did not dispute that the Governing Documents contained New York choice-of-law clauses.

"A core dispute in th[e] action [wa]s whether Venezuelan law or New York law govern[ed] the Court's analysis of the parties' claims." *Id.* at 284. My colleague Judge Failla, before whom the case was pending, concluded that New York law applied to the entirety of the parties' claims. *Id.* at 291. In so finding, the court rejected two arguments that Venezuelan law applied.

First, the court found that Section 8-110 of the Uniform Commercial Code (UCC), which is part of the law of every state (including, of course, New York, *see* N.Y. U.C.C. § 8-110(a)(1)), did not apply to the dispute. Section 8-110 provides that "[t]he local law of the issuer's jurisdiction ... governs ... the validity of a security."

Second, the court dismissed various irrelevant case law arguments regarding transactions with foreign countries and violations of foreign law. *Id.* at 287-90.

Judge Failla's decision was appealed to the Second Circuit. *See Petroleos de Venezuela S.A. v. MUFG Union Bank, N.*A., 51 F.4th 456 (2d Cir. October 13, 2022) ("*Petroleos II*"). On appeal, the Second Circuit determined that the case raised several novel issues of state law and certified three questions to the New York Court of Appeals.

First, the court asked, "Given PDVSA's argument that the Governing Documents are invalid and unenforceable for lack of approval by the National Assembly, does New York Uniform

Commercial Code section 8-110(a)(1) require that the validity of the Governing Documents be determined under the Law of Venezuela, 'the local law of the issuer's jurisdiction'?" *Id.* at 475. In so doing, the court found that the "broad effect [given] to choice-of-law clauses in New York" by *Ministers* and *IRB-Brasil*'s raised significant questions as to 8-110(a)(1)'s applicability to the case. The court noted that:

> [S]ection 8-110 is not a freestanding choice-of-law rule. It is closely related to and gives effect to the substantive law governing commercial contracts set forth in section 8-202, and is accordingly an integral part of a comprehensive statutory scheme of substantive law under New York's Uniform Commercial Code. Concluding that the parties' contractual choice-of-law election in this case overrides section 8-110, assuming for the sake of discussion that it otherwise applies, would potentially impact the parties' abilities to assert their substantive rights under the New York Uniform Commercial Code more broadly.

*Id.* at 471.

Second, the court asked, "Does any principle of New York common law require that a New York court apply Venezuelan substantive law rather than New York substantive law in determining the validity of the Governing Documents?" In so doing, the court started by explaining that "The general rule under New York law . . . is that 'courts will ***generally enforce*** choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties' intent.'" *Id.* at 472 (emphasis added) (quoting *Ministers*, 26 N.Y.3d at 470). Next, the Circuit announced that, in its view, "The Court of Appeals of New York has not decided whether, in light of *Ministers* and *IRB-Brasil*, New York recognizes [any] exception[s] to the principle that choice-of-law clauses are enforceable and require application only of the 'substantive law' of the chosen jurisdiction." *Petroleos II* at 473. Repeating its statement from *Capstone* in 2018, the court pointed out that it had "discerned ***at least one possible exception*** to this general rule [of *Ministers*] that may potentially apply in this case. The New York Court of Appeals has recognized a public policy exception." *Id.* (emphasis added) (citing *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629, (2006)). The court

identified this "one possible exception" as the public policy exception described in the Restatement (Second) of Conflict of Laws § 187(2). The Second Circuit did not mention in *Petroleos II* the other exception enshrined in Restatement § 187(2) – the "sufficient contacts" test it had applied in *Moseley* and *Elliott.* However, the Second Circuit cited a case from the New York Court of Appeals that mentioned both of the exceptions in the Restatement. *See Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629, (2006). However, the Second Circuit concluded its discussion of the second certified question by saying, "By identifying the above exception [i.e., the public policy exception] *we do not intend to rule out the possibility that other common law doctrines may be relevant.*" *Id.* (emphasis added).

Finally, the court certified the third question of "Are the Governing Documents valid under New York law, notwithstanding the PDV Entities' arguments regarding Venezuelan law?" *Id.* at 475-76. That question is not relevant for our purposes.

Accepting certification, the New York Court of Appeals acknowledged that, "The Second Circuit deferred decision because this case raises important questions about the scope of an as-of-yet uninterpreted provision of the New York Uniform Commercial Code and about potential common law exceptions to New York's general approach to enforcing contractual choice-of-law elections that we have not addressed and that are important to the State's choice-of-law regime and status as a commercial center." *Petróleos III* at 472–73 (cleaned up). This certainly seems like an admission that the Second Circuit was correct in concluding that the existence of common law exceptions remained an open issue – and an important one.

But following the rule that a court does only what it must to resolve a particular pending dispute, New York's high court answered only the first of the three certified questions, framing the issue it decided as: "Given the presence of New York choice-of-law clauses in the [relevant

agreements], does UCC 8-110 (a) (1), which provides that the validity of securities is determined by the local law of the issuer's jurisdiction, require the application of Venezuela's law to determine whether the 2020 notes are invalid due to a defect in the process by which the securities were issued?" *Id.* at 473.

The court began its analysis by reaffirming its prior holdings that, "The inclusion of a New York choice-of-law clause in a contract demonstrates the parties' intent that 'courts not conduct a conflict-of-laws analysis,' which thereby 'obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives,' unless the parties or the legislature clearly express a contrary intent." *Id.* at 474 (citing *Ministers*, 26 N.Y.3d at 468; *IRB–Brasil*, 20 N.Y.3d at 312). Since the Governing Documents stated that they "shall be governed by[ ] the laws of the State of New York without regard to the conflicts of law provisions thereof (other than Section 5–1401 of the New York General Obligations Law)," the court found the documents were generally governed by New York's substantive law, except in the narrow category of cases that were subject to the statutory choice-of-law directives as set forth in § 5–1401(1). *Id.* One such exception, as we noted many pages ago in this opinion, is that, even if parties choose New York law as governing, that law "shall not apply ... to the extent provided to the contrary in subsection (c) of section 1–301 of the uniform commercial code." *Id.* UCC 1–301(c)(6) provides in turn that, if UCC 8–110 "specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted."

The court then answered the first certified question in the affirmative, holding that, per the UCC, Venezuelan law governed the validity of the notes. The court further concluded that, by virtue of the choice of law provision in the Government Documents, New York law governed the

transaction "in all other respects, including the consequences if a security was issued with a defect going to its validity." *Id.* at 467.

The court then said, "Given our answer to this question, we do not reach the second and third certified questions," instead noting that, "This is not a case where engaging in a conflict-of-laws analysis would frustrate the legislature's purpose." *Id.*at 474. The second question, of course, is the question raised by this and so many other cases, which is: is *Moseley* good law, or do *Ministers and IRB-Brasil* render it erroneous? But because answering that question would have been essentially advisory (no answer being needed to resolve the case before it), the New York Court of Appeals did not even cite, let alone discuss, *Moseley,* or comment on its holding that New York courts generally follow the Restatement rule when assessing the effectiveness of contractual choice-of-law provisions. *Id.* at 20.

But even though New York's high court expressly declined to answer the question that is dispositive for our purposes, it nonetheless chose to "reaffirm the principle of *IRB–Brasil* and *Ministers* that when the parties have chosen New York Law, a court may not contravene that choice through a common-law conflicts analysis." *Id.* The Court of Appeals also analyzed whether the Venezuelan bond transaction had a "New York nexus," *id.* at 470 – an exercise that would seem to be necessary only if it were planning to respond to the second certified question.

On remand from the New York Court of Appeals, the Second Circuit held that Venezuelan law governed validity of instruments under UCC § 8-110. *Petroleos De Venezuela S.A. v. MUFG Union Bank, N.A.*, 106 F.4th 263, 270 (2d Cir. 2024) ("*Petroleos IV*"). The court then remanded the case to the district court to make further findings on any remaining questions of foreign law. In its remand order, the Circuit "express[ed] no view as to . . . any other claims" made in the

litigation, i.e., any claims as to the "exception[s] to the principle that choice-of-law clauses are enforceable and require application only of the 'substantive law' of the chosen jurisdiction." *Id.*

Since *Petroleos*, courts in this circuit have continued to apply *Moseley* and the Restatement "exceptions." *See, e.g., LG Cap. Funding, LLC v. ExeLED Holdings Inc.*, No. 17-CV-4006 (LJL), 2024 WL 1116082, at *16 (S.D.N.Y. Mar. 13, 2024)("even after the New York Court of Appeals's decision in [*Ministers*]—which stated that 'New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract'—a court should consider whether a choice-of-law provision bears a reasonable relationship to the parties or transaction or violates a fundamental policy of a state with a materially greater interest than the chosen state."); *DF Ventures, LLC v. Aaron & Gianna, PLC*, No. 22-CV-9586 (LJL), 2024 WL 916343, at *10 (S.D.N.Y. Mar. 4, 2024) (same); *Keybank Nat'l Ass'n v. Nour Limo, Inc.*, 345 F.R.D. 555, 562 (E.D.N.Y. March 22, 2024); *Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, No. 23-CV-8808 (RER) (JAM), 2024 WL 3513456, at *9 (E.D.N.Y. July 23, 2024).

## III.    This Court's Original Order

Contrary to the implication in BDO's reconsideration motion, this court did not hold that *Ministers* was no longer good law. Instead, the court followed *Moseley*, because this court is "bound to follow the Second Circuit's interpretation of New York law unless and until it is overruled by the Second Circuit itself or it is undermined by 'a more recent decision regarding New York law from the New York Court of Appeals.'" *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 94 (S.D.N.Y. 2021) (quoting *Adebiyi v. Yankee Fiber Control, Inc.*, 705 F. Supp. 2d 287, 291 n.4 (S.D.N.Y. 2010)). I noted the difficulty of squaring *Moseley* with *Ministers* but concluded that there was not much I could do about it, given the fact that binding Second Circuit precedent in a

factually indistinguishable case that was decided after *Ministers* was on the books. (Dkt. No. 24 at 10-12).

In light of *Moseley*'s recognition of the "sufficient contacts" requirement for applying a New York choice of law provision, this court concluded that the parties' choice-of-law provision was unenforceable, because New York had no contacts whatsoever to the transaction that underlies this lawsuit. Accordingly, the court applied Colorado law, finding that Colorado was the only state with any relationship to the instant case.

## IV.  The Court Did Not Commit a Clear Error in Applying *Moseley*

BDO now asserts that it was a "clear error" for the court to apply *Moseley,* the reason being that *Petróleos* had effectively overruled the Second Circuit's holding in *Moseley*. BDO concludes that, since *Moseley* is no longer good law, the court must enforce the parties' choice-of-law provision and apply New York law to the instant case. And if there were no choice of law analysis the transfer motion should have been denied, since the decision to transfer relied on Colorado public policy – which, under a common law choice of law analysis, trumped the applicability of New York law.

BDO is incorrect.

First, I am constrained to note that this court was hardly the only party to "overlook" *Petroleos* – BDO did, since it never called the case to my attention in connection with the original motion. *Petroleos* was decided after Rojas made his motion but before BDO submitted its brief in opposition to that motion. That brief does not mention *Petroleos*, and BDO never sent the court a letter identifying the opinion, or making the argument that *Moseley* was no longer good law in light of *Petroleos*.

Nor did I "clearly err" in applying *Moseley* in light of *Petroleos*, because *Petroleos* does not qualify as an intervening change in controlling law.

One thing is quite clear from the above discussion: *Petroleos* did not effectively overrule *Moseley*. The New York Court of Appeals never mentioned *Moseley*. And it expressly declined to answer the certified question that could have overruled *Moseley*.

Moreover, before refusing to answer that question, the New York Court of Appeals appears to have admitted that it had never before ruled on the issue. *Petróleos III* at 472–73 ("this case raises important questions . . . about potential common law exceptions to New York's general approach to enforcing contractual choice-of-law elections that we have not addressed and that are important to the State's choice-of-law regime and status as a commercial center.") (cleaned up). So the only thing that the New York Court of Appeals "clarified" in Petroleos is that it has not yet settled the law on the point implicated by *Moseley* and *Elliot* – and that *Petroleos* was not the vehicle for resolving the disputed issue.

The actual holding in *Petroleos* – which turns on the interplay between General Obligations law § 5–1401(1) and the Uniform Commercial Code – has no implications for this case, which presents no similar issue. So the rule announced by New York's highest court in *Petroleos* simply does not have anything to do with the resolution of this case. By reaffirming the continuing validity of *Ministers* and *IRB-Brasil*, the New York Court of Appeals was doing the antithesis of changing controlling law – it was reaffirming the law on its books. And it was doing so without resolving the important but yet unanswered question of whether there remained any exceptions to the holding in those cases.

I previously acknowledged that it was difficult to square *Moseley* with *Ministers,* but concluded that, as *Moseley* was factually indistinguishable from the case before me, I had no

choice but to follow it. Nothing in the New York Court of Appeals' decision in *Petroleos* causes me to alter that conclusion. In fact, it strengthens me in the belief that I did the right thing by following what for me is "controlling law" – that being the law of the Second Circuit. As the New York Court of Appeals did not find *Moseley* to be bad law, while acknowledging that the issue of exceptions to the rule of *Ministers* remained unresolved, there is no conceivable basis for this court to conclude that *Petroleos* should alter the result I reached in the first place – which is that I am bound to follow *Moseley. See Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68. 93-94 (S.D.N.Y. 2021); *Retina Assocs. of W. New York, P.C. v. McKesson Corp.*, No. 23-CV-6174-FPG, 2023 WL 7326050, at n.4 (W.D.N. Y. Nov. 7, 2023).

The Second Circuit is obviously well aware that there is a problem here; that is clear from the fact that it certified a question to the New York Court of Appeals "about potential common law exceptions to New York's general approach to enforcing contractual choice-of-law elections that [the Court of Appeals] ha[s] not addressed." *Petróleos II* at 473. Unfortunately – though understandably, given that its ruling on the first certified question disposed of the entire dispute in *Petroleos* – the New York Court of Appeals declined to address and resolve that issue. Unless and until New York's high court instructs our Court of Appeals otherwise, the Restatement exception to choice of law clauses for cases with which the chosen state has no other contact remains intact and applicable. End of story.

BDO urges this court to conclude that the Second Circuit "simply overlooked" *Ministers* when it decided *Moseley*. I can't do that. It is true that the Second Circuit did not discuss *Ministers* in *Moseley* – or in *Elliott*. But it unquestionably did so in *Petroleos II*. Unless and until the Second Circuit concludes that *Moseley* is wrong (which it may well be), the court must presume that the Second Circuit, in both *Elliot* and *Moseley*, found some way to distinguish *Ministers* (albeit *sub*

*silentio*). I note that a number of my colleagues have reached precisely that conclusion in many cases, including cases decided after *Petroleos* reaffirmed *Ministers. Cap. Funding, LLC v. ExeLED Holdings Inc.*, No. 17-CV-4006 (LJL), 2024 WL 1116082, at *16 (S.D.N.Y. Mar. 13, 2024); *DF Ventures, LLC v. Aaron & Gianna, PLC*, No. 22-CV-9586 (LJL), 2024 WL 916343, at *10 (S.D.N.Y. Mar. 4, 2024); *DarkPulse, Inc. v. Crown Bridge Partners, LLC*, No. 22 CIV. 8163 (VM), 2023 WL 6386006, at *4 (S.D.N.Y. Sept. 29, 2023); *Busrel Inc. v. Dotton*, No. 1:20-CV-01767, 2022 WL 16559446, at *12 (W.D.N.Y. Nov. 1, 2022); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2022 WL 1997207, at *15 (S.D.N.Y. June 6, 2022); *Medtronic, Inc. v. Walland*, No. 21 CIV. 2908 (ER), 2021 WL 4131657, (S.D.N.Y. Sept. 10, 2021).

If BDO believes that *Moseley* and *Elliot* incorrectly understand New York law, then it is free to raise that argument in the Second Circuit. Perhaps this is the case in which the Circuit will re-certify the dispositive and important but still answered second question to the New York Court of Appeals. However, a motion for reconsideration "is not a substitute for appeal and may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Morales*, 25 F.Supp.2d at 372 (internal citations and quotation marks omitted). I simply cannot find any matter or controlling decision that might have materially influenced my earlier decision. Rather, the New York Court of Appeals' decision in *Petroleos* simply reinforces my original conviction.

BDO's motion is denied.

## CONCLUSION

For the reasons discussed above, the motion for reconsideration is DENIED.

This constitutes the decision and order of the court. It is a written opinion. The Clerk of

Court is respectfully directed to terminate the motion at Docket Number 25.

Dated: August 8, 2024
     New York, New York

                                     U.S.D.J.

BY ECF TO ALL COUNSEL